## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ANDREW PAUL LEONARD,      )
d/b/a APL Microscopic,       )
                                )
        Plaintiff,        )
                                )
   v.                  )     Civ. Action No. 12-86–LPS–CJB
                                )
STEMTECH INTERNATIONAL, INC.,    )
                                )
        Defendant.     )

## REPORT AND RECOMMENDATION

Plaintiff Andrew Paul Leonard ("Plaintiff") filed this action for copyright

infringement against defendant Stemtech International, Inc. ("Stemtech" or "Defendant")

regarding several instances of the alleged infringement of a photographic image created by

Plaintiff. Presently pending before the Court is Defendant's motion to dismiss this action as a

duplicative filing ("Motion to Dismiss") and Defendant's related motion for sanctions ("Motion

for Sanctions").[1] (D.I. 6, 10) For the reasons that follow, the Court: (1) recommends that

---

[1]    Defendant's Motion to Dismiss is a case-dispositive motion, the resolution of
which requires the Court to issue a Report and Recommendation pursuant to 28 U.S.C. §
636(b)(1)(B) and Del. LR 72.1(a)(3). However, there is not uniformity in the Circuits as to
whether a Motion for Sanctions brought under Federal Rule of Civil Procedure 11 should be
treated as a case-dispositive motion, *see, e.g., Gendron v. New Jersey Transit Rail Operations,
Inc.*, Civil Action No. 03-3320 (JLL), 2007 WL 1741760, at *2 & n.7 (D.N.J. June 14, 2007)
(citing cases); *Giganti v. Gen-X Strategies, Inc.*, 222 F.R.D. 299, 305 n.9 (E.D. Va. 2004) (citing
cases), and the United States Court of Appeals for the Third Circuit does not appear to have
spoken on the issue. Our Court has, in one case, treated objections to a Magistrate Judge's
recommendation regarding a Rule 11 motion as non-dispositive, in an instance where the
Magistrate Judge recommended against the imposition of sanctions. *Klapper v. Commonwealth
Realty Trust*, 657 F. Supp. 948, 950-53 (D. Del. 1987). In another case, *Rader v. ING Bank*, C.A.
Nos. 09-340-SLR/LPS, 09-544-SLR/LPS, 09-781-SLR/LPS, 2010 WL 1403962, at *8 n.2 (D.
Del. Apr. 7, 2010), this Court assumed that "a motion for Rule 11 sanctions—at least one that, in
part, asks the Court to enjoin a party from filing future additional lawsuits—is a dispositive
motion." Here, the Defendant seeks only monetary sanctions in its Motion for Sanctions, not an

Defendant's Motion to Dismiss be DENIED; (2) orders that Defendant's Motion for Sanctions be

DENIED; and (3) orders that this action be consolidated with Civil Action No. 08-67-LPS-CJB.

## I.   BACKGROUND

Plaintiff is a professional photographer who uses an electron microscope as his camera.

(D.I. 1 at ¶ 6) His subject matter is often difficult to procure and prepare and, consequently, his

photographs are highly desirable, particularly to the medical and pharmaceutical industries. (*Id.*)

Defendant Stemtech is a company that markets nutrition supplements and sells them on its own

and through a network of distributors. (D.I. 6 at 4)

### A.   *Leonard I*

On February 1, 2008, Plaintiff commenced his first action in this Court, Civil Action

Number 08-067-LPS-CJB ("*Leonard I*"). (*Leonard I*, D.I. 1) In that Complaint (the "First

Complaint"), Plaintiff asserted a claim of copyright infringement of two of his photographic

images against Defendant Stemtech, which was then known as "Stemtech HealthSciences, Inc."[2]

Those two images, which are known as Image 4 and Image 5[3] and are collectively titled

---

order disposing of a claim or defense nor one restraining the Plaintiff from filing future litigation. (D.I. 10 at 18) Moreover, the Court's ruling on the motion is that no relief should be granted. In light of this, and consistent with the combined teachings from this Court's precedent in *Klapper* and *Rader*, I will treat the Motion for Sanctions as a non-dispositive motion, one resolved pursuant to 28 U.S.C. § 636(b)(1)(A) and D. Del. LR 72.1(a)(2). *See also Giganti*, 222 F.R.D. at 305 n.9 ("The better reasoned cases conclude that the issue of Rule 11 sanctions is a non-dispositive matter subject to clearly erroneous review under Rule 72(a), unless the nature of the sanction imposed, *i.e.,* dismissal of the offending claim or defense, is itself dispositive of the claim or defense.").

[2]      On October 12, 2009, Stemtech HealthSciences, Inc. changed its corporate name to Stemtech International, Inc. (D.I. 8, ex. 2; D.I. 9 at ¶ 2)

[3]      Although the First Complaint in *Leonard I* purported to assert a claim for infringement of Image 5, Plaintiff later confirmed that he was no longer asserting any claims of

"Scanning Electron Microscopy of Human Bone Marrow Stem Cells," were registered on Certificate of Registration No. VA–1–426–177. (*Id.* at ¶¶ 11-12) In his First Complaint in *Leonard I*, Plaintiff alleged that Defendant, without authorization, infringed his copyright by "using, copying, and displaying" the Images on its Internet websites, in publications, and in video presentations, and by "ma[king] the Images available to its sales and distribution network for their use, copying and distribution." (*Id.* at ¶¶ 15-18) Plaintiff alleged that this activity occurred from "[a]t least as early as June 2006" through January 2008. (*Id.*)

In a Scheduling Order entered on January 13, 2009, the District Court ordered that all motions to amend the pleadings in *Leonard I* be filed by October 16, 2009. (*Leonard I*, D.I. 29 at ¶ 6) The parties later agreed and stipulated that the deadline to file all motions to amend pleadings should be moved to January 18, 2010. (D.I. 58 at ¶ 8)

On July 16, 2009, Plaintiff moved to amend the First Complaint in *Leonard I* to "add claims for relief based on contributory copyright infringement and vicarious copyright infringement that are related to the original claim for direct copyright infringement by Defendant, and to amend the claim for relief based on Defendant's numerous alleged violations of Leonard's copyrights." (*Leonard I*, D.I. 49 at ¶ 3) Defendant opposed this motion on various grounds (*Leonard I*, D.I. 55), but the District Court ultimately granted Plaintiff's motion on July 16, 2010 (*Leonard I*, D.I. 74, 75).

On the same date, Plaintiff filed his First Amended Complaint ("Amended Complaint") in *Leonard I*. (D.I. 76) The Amended Complaint contained 38 counts, this time alleging that Stemtech was guilty of infringing Plaintiff's copyright as to not only Images 4 and 5, but also to

---

copyright infringement with respect to that Image. (*Leonard I*, D.I. 137 at 28)

3

two other images: Images 2 and 3, also titled "Scanning Electron Microscopy of Human Bone Marrow Stem Cells," which were registered with the United States Copyright Office together on Certificate of Registration No. VA–1–426–178. (*Leonard I*, D.I. 76 at ¶¶ 10-11; *Leonard I*, D.I. 101, ex. H)[4] The Amended Complaint alleges two counts of direct copyright infringement against Stemtech due to Stemtech's "using, copying and displaying" these images "on its Internet websites, in publications, and in video presentations without authorization" and otherwise making the Images available to its distributors via certain websites. (*Leonard I*, D.I. 76 at ¶¶ 17-18, 23-24) Among the Stemtech websites that Defendant was alleged to have used as a tool for this infringement were www.stemtechbiz.com and various pages on the site img.exigo.com. (*Id.* at ¶¶ 17, 23) The Amended Complaint also alleges 36 counts of vicarious or contributory copyright infringement against Defendant, linked to the alleged display of certain of the Images on websites of various alleged distributors of Defendant's products. (*Id.* at ¶¶ 28-208) The Amended Complaint alleged that Defendant's infringement began "at least as early as December 25, 2007" and stated that "Defendant continues to use, copy and display the Images without license or permission." (*Id.* at ¶¶ 17-19, 23-25)

On December 30, 2010, Defendant filed a motion for summary judgment ("Summary Judgment Motion"), asking this Court to grant summary judgment in its favor on liability with respect to Image 2 and as to Plaintiff's inability to collect certain types of damages with respect to all Images. (*Leonard I*, D.I. 101) On August 31, 2011, *Leonard I* was referred to me by Judge Leonard P. Stark to hear and resolve all pretrial matters, up to and including the resolution of

---

[4]     Images 2, 3, 4, and 5 were all registered with the U.S. Copyright Office on December 20, 2007. (*Leonard I*, D.I. 101, ex. H)

4

case dispositive motions. (*Leonard I*, D.I. 131)

On December 5, 2011, I issued a Report and Recommendation ("Report") recommending that the Court grant Defendant's Summary Judgment Motion in its entirety. (*Leonard I*, D.I. 149) On December 22, 2011, Plaintiff filed its objections to that Report, (*Leonard I*, D.I. 150), and on March 28, 2012, the District Court issued a Memorandum Order adopting the Report in its entirety (*Leonard I*, D.I. 155). The practical impact of the entry of summary judgment in Defendant's favor was threefold. First, it meant that Defendant was not liable for infringement of Image 2 as a matter of law. Second, it precluded Plaintiff from electing to receive statutory damages and attorney's fees, pursuant to 17 U.S.C. § 412, with regard to any alleged infringement of Images 3 or 4—on the grounds that all of the alleged infringements constituted a single, "continuing infringement" that commenced prior to the registration of the Images with the U. S. Copyright Office. Third, it precluded Plaintiff from collecting damages for any infringement of Images 3 and 4 in the form of Defendant's profits pursuant to 17 U.S.C. § 504(b). Plaintiff's claims for actual damages and for a permanent injunction regarding the alleged infringement of Images 3 and 4 remain pending.

## B.     *Leonard II*

On January 27, 2012, Plaintiff initiated the instant action, Civil Action Number 12–86–LPS–CJB ("*Leonard II*"). (D.I. 1) The Complaint in this matter ("Complaint") asserts one count of copyright infringement against Defendant, with respect to Image 3 only. More specifically, the Complaint alleges that on January 16, 2012, Defendant published three web

pages[5] containing Image 3 on its official website. (*Id.* at ¶ 8) Some or all of these web pages are alleged to have also contained: (1) the phrases "Stemtech International, Inc." and "Stemtech UK"; (2) the Stemtech logo; (3) Stemtech's "copyright notification"; and (4) a link to Stemtech's Code of Ethics. (*Id.*) Plaintiff further asserts that Defendant distributed Image 3 "through DVDs and possibly file sharing web-based applications, such as Exigo" and did so without a license. (*Id.* at ¶¶ 9-10) As a result of these actions by Defendant, Plaintiff asserts that he is entitled to recover actual damages, additional profits, or, in the alternative, an award of statutory damages pursuant to 17 U.S.C. § 504(a). (*Id.* at ¶¶ 16-19) He further asserts that he is entitled to recover costs and attorney's fees pursuant to 17 U.S.C. § 505. (*Id.*)

On February 17, 2012, Defendant filed its Motion to Dismiss the instant action on the grounds that it is duplicative of *Leonard I*. (D.I. 6) On March 13, 2012, Defendant filed its Motion for Sanctions, seeking monetary sanctions against Plaintiff and his counsel pursuant to Federal Rule of Civil Procedure 11, on the grounds that Plaintiff filed the instant action in bad faith and for an improper purpose. (D.I. 10 at 1) On April 6, 2012, *Leonard II* was referred to me by Judge Stark to hear and resolve all pretrial matters, up to and including the resolution of case dispositive motions. (D.I. 22) Both motions were fully briefed as of April 13, 2012 (D.I. 24), and are therefore ripe for resolution.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint

---

[5]     All three of the web pages at issue are alleged to be links navigable from the website "whatarestemcells.stemtechbiz.co.uk." (D.I. 1 at ¶ 8)

"for failure to state a claim upon which relief can be granted." In considering a motion to dismiss pursuant to Rule 12(b)(6), "all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (internal quotation marks and citation omitted). A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Courts faced with a motion to dismiss must generally limit their consideration solely to "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).[6]

---

[6] Plaintiff suggests that in considering the Motion to Dismiss, the Court may not, without converting the motion into a motion for summary judgment, take judicial notice of: (1) publicly-filed documents regarding Stemtech's incorporation; (2) the Amended Complaint in *Leonard I*; and (3) the Court's Report in *Leonard I*. (D.I. 15 at 4-5) The Court rejects this argument. First, it is well settled that publicly-filed documents, such as certificates of incorporation, may properly be the subject of judicial notice. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also Gordon v. Goodyear*, No. 12 C 369, 2012 WL 2885695, at *6 n.2 (N.D. Ill. July 13, 2012) ("The Court can take judicial notice of [a certificate of incorporation and proxy statement] for purposes of the motion to dismiss.") (citing cases). Second, as to the Amended Complaint and the Report in *Leonard I*, the law is clear that the Court may properly consider the existence of the record in a previous action—particularly in a circumstance such as this, where the Court's charge is to determine whether a later-filed matter raises claims that are at issue in an earlier-filed matter. *See LG Electr. U.S.A., Inc. v. Whirlpool Corp.*, C.A. No. 10-311-GMS, 2011 WL 4543886, at *3-4 (D. Del. Sept. 29, 2011) (noting that "[a]lthough the court may not generally consider evidence beyond the complaint in deciding a Rule 12(b)(6) motion, when a motion to dismiss is based upon the defense of claim preclusion, the court may take judicial notice of the record in the [previous] action in reaching its determination" and consider the jury verdict in conducting a claim preclusion analysis); *see also Toscano v. Connecticut Gen. Life Ins. Co.*, 288 F. App'x. 36, 38 (3d Cir. 2008) ("The defense of claim preclusion . . . may be raised and

A motion to dismiss pursuant to Rule 12(b)(6) is not only the proper vehicle by which a

party may challenge the factual sufficiency of a pleading, but it is also an appropriate means by

which a party may seek to dismiss a later-filed action on the grounds that it is duplicative of an

earlier-filed action. *See, e.g., Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052,

1057-58 (S.D. Cal. 2007); *Sensormatic Sec. Corp. v. Sensormatic Electr. Corp.*, 329 F. Supp. 2d

574, 578-79 (D. Md. 2004). Indeed, the United States Supreme Court has long recognized that as

part of its general power to administer its docket, a district court may stay or dismiss a suit that is

duplicative of another federal court suit. *Colorado River Water Conservation Dist. v. United*

*States*, 424 U.S. 800, 817 (1976); *Sensormatic*, 329 F. Supp. 2d at 579.

## B.    Motion for Sanctions

Rule 11 authorizes a court to sanction a party or a party's counsel if a pleading, written

motion or other paper, *inter alia*, is presented for an "improper purpose, such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation," if the claims, defenses, or legal

contentions presented are not "warranted by existing law or by a nonfrivolous argument for

extending, modifying, or reversing existing law or for establishing new law," or if the allegations

lack "evidentiary support." Fed. R. Civ. P. 11(b) & (c); *Loving v. Pirelli Cable Corp.*, 11 F.

---

adjudicated on a motion to dismiss and the court can take notice of all facts necessary for the
decision. Specifically, a court may take judicial notice of the record from a previous court
proceeding between the parties.") (citations omitted). It is worth noting, however, that the Court
has not considered any fact in the Report issued in *Leonard I* for the truth of the matters asserted
therein. *See Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) ("While a prior
judicial opinion constitutes a public record of which a court may take judicial notice, it may do
so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the
facts asserted in the opinion."), *abrogated in part on other grounds by Bell Atl. Corp. v.*
*Twombly*, 550 U.S. 544 (2007); *see also* (D.I. 15 at 6) (Plaintiff asserting its concern that "the
Court cannot take judicial notice of . . . [the] findings [in the Report in *Leonard I*]").

Supp. 2d 480, 486 (D. Del. 1998). The United States Court of Appeals for the Third Circuit has described this standard as "stringent" because sanctions: "1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes . . . 2) tend to spawn satellite litigation counter-productive to efficient disposition of cases . . . and 3) increase tensions among the litigating bar and between [the] bench and [the] bar." *Doering v. Union Cnty Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (internal quotation marks and citations omitted). Accordingly, Rule 11 should be interpreted "to prescribe sanctions, including fees, only in the exceptional circumstance . . . where a claim or motion is patently unmeritorious or frivolous." *Id.* (internal quotation marks and citations omitted); *see also Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987) (cautioning litigants that Rule 11 is not for routine use whenever parties disagree about the correct resolution of a matter and stating that "when issues are close, the invocation of Rule 11 borders on the abusive").

## III. DISCUSSION

The Court will first address the merits of Defendant's Motion to Dismiss, as the resolution of that motion necessarily implicates issues at play in Defendant's Motion for Sanctions. The Court will thereafter address the merits of the Motion for Sanctions.

### A. Motion to Dismiss

#### 1. Are the Allegations in *Leonard II* an Example of Claim-Splitting?

Defendant asserts that *Leonard II* "is not only duplicative of [*Leonard I*] that is still pending in this very Court but <u>identical</u> in every fashion." (D.I. 6 at 8) (emphasis in original) It therefore argues that by filing *Leonard II*, Plaintiff has engaged in a practice known in the law as "claim-splitting"—and that the second suit must therefore be dismissed. The Court will first

9

examine the law regarding claim-splitting and will then assess how the facts of this case relate to that legal precedent.

### a.   Legal Precedent Regarding Claim-Splitting

"Claim-splitting," also known as the "rule against duplicative litigation [has been described as] the 'other action pending' facet of the res judicata doctrine." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, Civ. No. 08-309-JJF-LPS, 2009 WL 2016436, at *3 (D. Del. July 9, 2009) (citing *Sensormatic*, 329 F. Supp. 2d at 579). "Just as res judicata applies to a second action filed after a final adjudication of the first action, the rule against claim splitting applies when . . . two suits are pending at the same time." *Id.* (internal quotation marks and citation omitted).[7] "Like res judicata, claim splitting prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." *Sensormatic*, 329 F. Supp. 2d at 579 (internal quotation marks and citation omitted).

The Third Circuit further discussed the legal rationale underlying the rule against claim-splitting in *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977). In *Walton*, plaintiff Carol Walton ("Walton") filed a federal class action lawsuit in February 1973 alleging that her employer, Eaton Corporation ("Eaton"), had discriminated against her due to her race and her sex. *Id.* at 69-70. In 1974, Walton hired a new set of attorneys; those attorneys, rather than seeking to amend the first complaint, filed a second employment discrimination action against Eaton in the same court. *Id.* at 70. The second complaint was "indistinguishable from [the]

---

[7]      "Regardless of the differences in form, both [the rule against claim-splitting and the doctrine of res judicata] intend to 'foster[] judicial economy and protect[] the parties from vexatious and expensive litigation.'" *Sensormatic*, 329 F. Supp. 2d at 579 n.4 (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)).

first," in that like the first, it asserted causes of action under 42 U.S.C. §§ 1981 and 1983 and

Title VII, and it alleged that Walton had been harassed, discharged and denied equal treatment in

various ways due to her race and sex. *Id.* The second complaint differed from the first only in

three respects: (1) it contained a general demand for a jury trial; (2) it was not brought as a class

action; and (3) it alleged Walton had suffered "emotional and mental injury" due to defendant's

conduct that would allow an award of compensatory damages. *Id.*

The Third Circuit, in reviewing the district court's decision to consolidate the two cases

but not to permit Walton a jury trial on any of her claims, noted that "it is clear that Mrs. Walton

had no right to maintain two separate actions *involving the same subject matter* at the same time

in the same court and against the same defendant." *Id.* (emphasis added).[8]  It noted that "[w]hen

the district court became aware that the two actions begun by Mrs. Walton were virtually

identical, it could have dismissed her second complaint without prejudice or it could have stayed

proceedings in the second action until judgment was entered in the first." *Id.*  The *Walton* Court

also noted that the "district court's decision to consolidate [the two actions] was obviously

unobjectionable," explaining:

> When a court learns that two possibly duplicative actions are pending on its
> docket, consolidation may well be the most administratively efficient
> procedure. If the second complaint proves to contain some new matters,
> consolidation unlike dismissal of the second complaint without prejudice or
> staying the second action will avoid two trials on closely related matters.
> If, on the other hand, the second complaint proves to contain nothing new,
> consolidation of the two actions will cause no harm provided that the
> district court carefully insures that the plaintiff does not use the tactic of

---

[8]     *Cf. Sensormatic*, 329 F. Supp. 2d at 579 ("In a claim splitting case, as with the
traditional res judicata analysis, the second suit will be barred if the claim involves the same
parties or their privies and 'arises out of the same transaction or series of transactions' as the first
claim.") (citation omitted).

> filing two substantially identical complaints to expand the procedural rights
> he would have otherwise enjoyed. In particular, the court must insure that
> the plaintiff does not use the incorrect procedure of filing duplicative
> complaints for the purpose of circumventing the rules pertaining to the
> amendment of complaints, Fed. R. Civ. P. 15, and demand for trial by jury,
> Fed. R. Civ. P. 38.

*Id.* at 71. The *Walton* Court ultimately affirmed the district court's decision. *Id.* at 75.

In *McKenna v. City of Philadelphia*, 304 F. App'x 89, 92 (3d Cir. 2008), the Third

Circuit further explored what it means for two cases to "involv[e] the same subject matter" for

purposes of the claim-splitting analysis set out in *Walton*. In *McKenna*, plaintiff's first suit, filed

in 1999, alleged that defendant City of Philadelphia's Police Department had discriminated

and/or retaliated against him for opposing racially discriminatory practices of the department.

304 F. App'x at 90. After being denied the opportunity to amend that complaint to add a

wrongful termination claim, plaintiff later filed a second suit in 2006, "again alleging retaliation

for [plaintiff's] opposition to racial discrimination in the Police Department." *Id.* at 91. The

district court dismissed the second suit with prejudice, finding it to be duplicative of the first suit,

under the meaning of *Walton*. *Id.*

On appeal, the *McKenna* Court noted that in *Walton*, while there were some differences

in the two suits at issue (in that the second suit involved a jury trial request, a different legal

claim and sought an additional type of damages), the teaching of *Walton* was that in order for the

subject matter of the two actions to be considered "the same," the "parallel complaints need not

be completely identical," but instead need only be "substantially identical." *Id.* at 92. In

examining the two suits at issue in *McKenna*, the Third Circuit found that any differences

between the retaliation claims in the two litigations were "purely semantic." *Id.* Although the

12

second suit included a First Amendment retaliation claim (while the first involved a retaliation

claim under Title VII), the Court noted that both claims "relie[d] on the same operative facts and

legal principles" and that plaintiff could not "point to any particular conduct that could be

considered a separate transaction or occurrence beyond the scope of [the first suit]." *Id.*[9] The

*McKenna* Court held that the district court should have either stayed the second action, dismissed

it without prejudice or consolidated it with the first action. *Id.* at 93.

The Third Circuit also addressed claim-splitting in *Schneider v. United States*, 301 F.

App'x 187, 189 (3d Cir. 2008) (per curiam). In doing so, the *Schneider* Court cited approvingly

the Second Circuit's decision in *Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000). The Third

Circuit described the *Curtis* decision this way:

> The plaintiffs in *Curtis* had amended their complaint once, and moved to
> file a second amended complaint. The Magistrate Judge denied the motion
> to amend, and the plaintiffs appealed the ruling to the district court. While
> their appeal was pending, the plaintiffs filed their second amended
> complaint as a new action. The district court affirmed the denial of the
> motion to file a second amended complaint because it was untimely, and
> dismissed the new complaint because it was duplicative.
>
> The court of appeals recognized the district court's power to administer its
> docket and dismiss a suit that is duplicative of another suit in federal court.
> *Id.* at 138 . . . . The court held, however, that the district court abused its
> discretion in dismissing the new complaint to the extent the plaintiffs
> sought to litigate events arising after the first amended complaint was filed.
> *Id.* at 140. The court explained that the denial of the motion to amend did
> not preclude litigation of such claims because the denial was not on the
> merits, and the doctrine of claim preclusion would not preclude litigation of
> events arising after the filing of the first complaint. *Id.* at 139. The court

---

[9]     The Court also found that plaintiff's "attempt to expand the scope of damages to
cover his wrongful termination" in the second complaint was insufficient to meaningfully
differentiate the cases, as the district court had previously denied the attempt to add that claim to
the first suit on statute-of-limitations grounds, and "[h]aving failed to appeal" that decision
"McKenna cannot revive that claim in this case." *McKenna*, 304 F. App'x at 92–93.

further held that the district court did not abuse its discretion in dismissing those claims arising out of the same events as alleged in the first amended complaint. *Id.* at 140. The court explained that these claims would have been heard if the plaintiffs had timely raised them, and that the plaintiffs could not avoid the consequences of their delay by filing a new action. *Id.*

*Schneider*, 301 F. App'x at 189.[10]

In applying the rationale of *Curtis* to the case before it, the *Schneider* Court found that to some degree, the complaint-at-issue was "nearly identical" to a proposed amended complaint that plaintiff Schneider had filed (and that was rejected by the district court) in a previously-existing case. *Id.* at 190. The *Schneider* Court held that the district court had not abused its discretion when it dismissed those aspects of the complaint-at-issue that had previously been raised in the prior proposed amended complaint. *Id.* However, it found that the district court had abused its discretion in dismissing the current complaint-at-issue "to the extent that Schneider sought to litigate events arising after the motion to amend [in the prior litigation] was filed." *Id.* It noted that plaintiff had claimed in the present complaint that he was wrongfully evicted in December 2007—a claim he could not have raised in the proposed amended complaint in the prior litigation, as that amended complaint was filed in November 2007, weeks before the eviction occurred. *Id.* Thus, the *Schneider* Court ruled, "the denial of the motion to amend [in the prior

---

[10]     In *Curtis*, the Second Circuit further explained that the related doctrine of claim preclusion "does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit." *Curtis*, 226 F.3d at 139 (citation omitted). It explained that "[t]he crucial date is the date the complaint was filed" as the "plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later-arising claims." *Id.*; *see also Sensormatic*, 329 F. Supp. 2d at 579-83 (dismissing, as examples of claim-splitting, allegations in the new complaint involving alleged breaches of the same contract at issue in a previously-filed suit against the same party, to the extent that those breaches arose out of the same operative facts as those at issue in the prior suit; but permitting the second suit to go forward as to alleged breaches of the contract that occurred *after* filing of the most recently-filed complaint in the first suit).

litigation] does not preclude Schneider from pursuing this claim [in the instant action]." *Id.*

From these cases (and those from other jurisdictions), a few general principles regarding claim-splitting can be divined. First, very often the doctrine of claim-splitting applies to bar a plaintiff from filing a new lawsuit after the court in an earlier action denied leave to amend the complaint to add those same claims. *Sensormatic*, 329 F. Supp. 2d at 579. In such circumstances, the second-filed suit is often not permitted to go forward—not only to prevent plaintiffs from circumventing prior court orders, but also because such circumstances tend to suggest that the claims raised in the second suit could well have been pursued in the prior litigation. *Id.* (citing *Curtis*, 226 F.3d at 139).[11]

Second, if the second-filed lawsuit not only involves the same defendant and the same (or similar) legal claims as does the first suit, but also arises out of the same set of operative facts as alleged in the first suit, then the second suit is likely an example of improper claim-splitting.[12]

---

[11]    *See e.g., Power Integrations,* 2009 WL 2016436, at *3 (finding that even if claim-splitting rules did not apply, a stay would still be appropriate because, *inter alia*, by restating a claim that another judge had ruled had been waived, plaintiff was "essentially asking me to sit as an appellate court and reverse [the first Judge's] denial. . . ."); *see also Dorsey v. Jacobson Holman PLLC*, 764 F. Supp. 2d 209, 212 (D.D.C. 2011) (finding plaintiff to have engaged in claim-splitting and dismissing second action, in part because the claims in second suit "mirror[ed]" the substance of plaintiff's proposed Third Amended Complaint in first suit, which had been denied by district court); *Levy v. City of New Carrollton*, Civil Action No. DKC 09-2552, 2010 WL 3190876, at *3 (D. Md. Aug. 11, 2010) (finding second-filed action to amount to claim-splitting where plaintiff had "previously attempted to advance the allegations in the instant complaint in a motion to amend the complaint in a previous case" that was denied, which underscored that "[h]ad the allegations been timely asserted in the previous action, they could have been adjudicated").

[12]    *See, e.g., Dorsey*, 764 F. Supp. 2d at 212-13 (finding that the second action involved claim-splitting despite plaintiff's contention that she only learned of certain facts alleged in the second action during the course of discovery in the first action, because the second suit "merely tweaks claims made already in *Dorsey I* or is based on facts known at the time *Dorsey I* was filed" and both suits thus involved "the same nucleus of facts"); *Levy*, 2010 WL

On the other hand, to the extent that the events-at-issue in the second suit arose after the filing of

the last complaint of record in the first case (or, at minimum, after the deadline for filing an

amended complaint in that case)—and thus involve different factual allegations than those clearly

at issue (or that could have been raised) in the first case—the second suit likely does not involve

claim-splitting and should proceed forward in some way.[13]  This is because in such a case, the

claims in the second suit could not fairly be said to be at issue in the first suit, nor could they

have been easily raised (if raised at all) in the first case. *Sensormatic*, 329 F. Supp. 2d. at 579

("The court must 'assess whether the second suit raises issues that should have been brought in

the first.'") (citing *Curtis*, 226 F.3d at 140).

### b.      Applying Legal Precedent Regarding Claim-Splitting to the Facts of *Leonard I* and *Leonard II*

With this precedent in mind, the Court now compares the allegations in *Leonard II* to

those in *Leonard I*. To be sure, as Defendant notes, there are many similarities between the

allegations in both cases.  In the operative complaints in both matters, Plaintiff asserts: (1) the

same type of legal claim (copyright infringement); (2) regarding the same work (Image 3); (3)

against the same Defendant (Stemtech International, Inc., previously known as Stemtech

HealthSciences, Inc.); (4) for similar conduct (the allegedly infringing use of Image 3 on

---

3190876, at *3 (facts alleged in the second action were a part of the same "subject" as the first
action for purposes of claim-splitting analysis, because they occurred on October 1, 2006, which
was within the time frame relevant to the first suit, which covered events from April 8, 2006
through November 13, 2006).

[13]      *See Hutchins v. United Parcel Service, Inc.*, 197 F. App'x. 152, 159-60 (3d Cir.
2006) (affirming district court's dismissal of plaintiff's race discrimination claims in a second
action—to the extent that they arose prior to the deadline to amend the complaint in the
plaintiff's earlier-filed race discrimination action—while allowing such claims that arose after
that deadline to proceed in the second action).

Defendant's websites, among other places). (*Compare* D.I. 1 at ¶¶ 8–9 *with Leonard I*, D.I. 76 at

¶ 23) Indeed, in both complaints, the names of the websites that the Defendant is alleged to have

used to publish the Image are very similar. (*Compare Leonard I*, D.I. 76 at ¶ 23 (alleging that

Defendant published Image 3 on, *inter alia*, the websites www.stemtechbiz.com and

img.exigo.com) *with* D.I. 1 at ¶¶ 8–9 (alleging that Defendant published or displayed Image 3 on

the website whatarestemcells.Stemtechbiz.co.uk and "via web-based applications . . . such as

Exigo"))

 However, when analyzed against the teachings of the legal precedent discussed above, the

claims in *Leonard II* do not appear to amount to improper claim-splitting. First, this is not a

circumstance where Plaintiff attempted to further amend his complaint in *Leonard I*, was denied

the opportunity to do so, and only then filed the Complaint in *Leonard II* containing the same

allegations.[14] Therefore, the filing of *Leonard II* was not an end-run around a prior denial of

Plaintiff's attempt to amend the complaint in *Leonard I*.

 Second, the operative events at issue in *Leonard II* occurred well after the date of the

Amended Complaint in *Leonard I* and well after the deadline for the filing of amendments to that

complaint. In the Amended Complaint in *Leonard I*, filed in July 2010, Plaintiff alleged

infringing activity by Defendant, without being specific as to the dates on which that activity

occurred. Yet even taking into account Plaintiff's claim in the Amended Complaint in *Leonard I*

---

[14] Indeed, in light of the late stage of the proceedings in *Leonard I* as of January
2012, it is understandable why—if Plaintiff truly felt that Defendant was engaging in new,
wrongful infringing activity in that month—Plaintiff chose to file a new lawsuit, instead of
seeking leave to further supplement the Amended Complaint in *Leonard I*. As of late January
2012, discovery in *Leonard I* had closed, the case dispositive motion deadline had passed, the
Court had entered its Report on Defendant's Summary Judgment Motion, and the case was
nearly ready for trial.

that "Defendant *continues to* use, copy and display the Images without license or permission" (*Leonard I*, D.I. 76 at ¶¶ 19, 25) (emphasis added), that would seem to place the clearly alleged infringing activity in *Leonard I* as occurring only up through July 2010—nearly a year and a half prior to the January 2012 infringements that are at the heart of *Leonard II*.[15] If, as was explained in *Curtis*, the rule against claim-splitting is not meant to "preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit" because the "plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events [but instead] may simply bring a later suit on those later-arising claims," then the filing of the second lawsuit in *Leonard II* was not improper. *Curtis*, 226 F.3d at 139 (citation omitted). Thus, the infringements alleged in *Leonard II* appear to be drawn from a different set of operative facts than those that are clearly alleged in *Leonard I*, or that could have reasonably been alleged prior to the deadline for amending the pleadings in that case (even if the nature of the claims raised in the two cases share some marked similarities).[16]

---

[15]    Plaintiff also suggests that the claims at issue in *Leonard II* are clearly different from those at issue in *Leonard I* because, in *Leonard II*, the alleged infringement of Image 3: (1) involves Image 3 being rotated counterclockwise by 90 degrees (in a way it was not oriented in the instances cited in *Leonard I*); (2) involves the Image being colored blue, as opposed to its green or violet color in the instances alleged in *Leonard I*; (3) is used in connection with Stemtech's new corporate logo and name, as opposed to being used in connection with the company's old corporate logo in *Leonard I*; and (4) is posted on a different website than the infringements at issue in *Leonard I*. (D.I. 15 at 5-6) Yet the most clear and important difference, for purposes of the claim-splitting analysis, is temporal: that the primary conduct alleged in *Leonard II* occurred well after the conduct alleged in the Amended Complaint in *Leonard I*.

[16]    As previously noted, the Complaint in *Leonard II* also asserts that in addition to the infringement of Image 3 alleged to have occurred on January 16, 2012, Defendant also "distributed [the Image] through DVDs, and possibly file sharing web-based applications." (D.I. 1 at ¶ 9) Plaintiff does not specify when this "distribution" is alleged to have happened, though the Complaint reads as if it occurred sometime after the infringing conduct on January 16, 2012.

Defendant puts forward two primary arguments in suggesting that the filing of *Leonard II* amounts to claim-splitting. First, in asserting that the claims at issue in the two suits are "identical," Defendant suggests that any infringement of Image 3 that it is alleged to have participated in on January 16, 2012 was already a part of the claims at issue in *Leonard I*. In primary support of this argument, Defendant notes that the July 2010 Amended Complaint in *Leonard I* included allegations that Defendant "continues to" infringe the Images. (*Leonard I*, D.I. 76 at ¶¶ 17-19, 23-25; *see also* D.I. 6 at 9; D.I. 24 at 7) It reads this as an allegation that would implicate any infringement by Defendant occurring up to the date of trial in *Leonard I* as necessarily being encompassed in the matters at issue in that case.[17] (*Id.*)

The Court, to the contrary, is not at all certain that were *Leonard II* never filed, Plaintiff would have been permitted to put forward evidence at trial in *Leonard I* of infringement occurring years past the date of the filing of the July 2010 Amended Complaint—including conduct occurring in January 2012. The Amended Complaint's reference to "continu[ing]" infringement seems more appropriately read to allege infringement up to the date of the filing of that complaint itself—not up to the date of trial on that complaint. Additionally, since any alleged infringement that occurred in January 2012 was not (and could not) have been asserted in the Amended Complaint in *Leonard I*, no discovery would have taken place in *Leonard I* regarding those

---

[17]     Defendant also notes that during discovery in *Leonard I*, Plaintiff asserted that he had found evidence of Defendant's infringing conduct "up through December 5, 2011, which Leonard claims is just the 'tip of the iceberg.'" (D.I. 6 at 9) This "tip of the iceberg" quotation comes from Plaintiff's expert report filed in *Leonard I*. (*Leonard I*, D.I. 140, ex. 1 at 18). In that document, Plaintiff's expert asserted that Plaintiff had discovered infringements of his Images by Stemtech distributors through September 17, 2011, not December 5, 2011. (*Id.* at 11, 18) Whatever the scope of the assertion, it is not clear that this type of statement by Plaintiff's expert would have any bearing on what alleged wrongs would be considered a part of the matters to be tried in *Leonard I*.

allegations. This would render it difficult to conduct a trial in *Leonard I* as to the merit of such allegations.

Defendant's second argument is that the claims at issue in *Leonard II* are part of an end-run of a different kind. Defendant asserts that "it appears the only reason Leonard filed the instant lawsuit [in *Leonard II*] is in an improper and bad faith attempt to try to revive numerous damage claims" that were disallowed by the Report issued in *Leonard I*. (D.I. 6 at 10) Noting that Plaintiff is now otherwise barred from arguing that Defendant's infringement of Image 3 in *Leonard I* can give rise to an award of statutory damages, attorney's fees or lost profits, Defendant claims that Plaintiff filed *Leonard II* solely as a means to argue that Plaintiff *can* collect such damages for the Defendant's infringement of Image 3 alleged in that case. (D.I. 23 at 5-8) For his part, Plaintiff does not assert that this was the primary motivation for the filing of *Leonard II*. Instead, Plaintiff repeatedly notes that the instant suit alleges claims involving different factual circumstances that are "separated by more than four years" from those in *Leonard I*, and that *Leonard II* was filed because of "Stemtech's abject refusal to respect Mr. Leonard's copyright protection of his images." (D.I. 15 at 7-8; D.I. 21 at 7 ("The Complaint in this case . . . was filed to address legitimate claims of copyright infringement of Plaintiff's copyrighted image which was first discovered by Plaintiff in January[] 2012."))

The Court cannot know with certainty what motivated Plaintiff to file the instant action. However, based on the record before me that I may properly consider in reviewing a motion to dismiss, I cannot clearly find that the filing of the instant case was simply a bad faith attempt to

20

re-litigate issues that have been decided in *Leonard I*.[18]   For now, the legal question before me regarding the Motion to Dismiss is whether *Leonard II* should be dismissed as an example of improper claim-splitting.  And as discussed above, the facts of the instant case, when considered in light of binding legal precedent, militate against a finding that *Leonard II* is duplicative of *Leonard I*.  For that reason, the Court recommends that the Motion to Dismiss be denied.

### 2.   Case Management of *Leonard I* and *Leonard II*

In some cases, where a court determines that the claims in the second action are sufficiently different than those in the first (so as not to constitute an example of claim-splitting), it might simply allow both cases to proceed on separate tracks.  *See, e.g., Sensormatic*, 329 F. Supp. 2d at 579-83 (denying a motion to dismiss with respect to portion of the action that did not constitute claim-splitting, therefore allowing the second action to proceed).  However, given the unique circumstances present here, I find that it would instead be appropriate to consolidate the instant case with *Leonard I*.

Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may ... consolidate the actions."  The Court has broad authority to consolidate such actions if, in its discretion, consolidation would "facilitate the administration of justice."  *Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc.*, 339 F.2d 673,

---

[18]     Plaintiff does seem to acknowledge that having filed *Leonard II* in an effort to address what he believes are legitimate, later-arising claims of copyright infringement, he will seek to argue that statutory damages, attorney's fees and lost profits are available with respect to the infringement of Image 3 alleged in this case.  Yet even if an attempt to collect such damages was part of the Plaintiff's motivation to file *Leonard II*, the Court is not now in the best position to assess the merit of that assertion.  It may be, as Defendant asserts, (D.I. 10 at 11-16), that Plaintiff would not be able to prevail on such a claim.  But that legal issue has not been squarely addressed nor briefed by Plaintiff.  I believe it would thus be premature for me to attempt to resolve the issue at this time.

675 (3d Cir. 1964). Although the existence of common questions of law or fact is a prerequisite to consolidation, their presence does not require consolidation pursuant to Rule 42(a). *Rohm & Haas Co. v. Mobil Oil Corp.*, 525 F. Supp. 1298, 1309 (D. Del. 1981). Instead, in considering whether or not to consolidate, "the Court must balance the savings of time and effort gained through consolidation against the inconvenience, delay, or expense that might result from simultaneous disposition of the separate actions." *Id.* A court may consolidate actions at the request of a party, but also has the inherent authority to order consolidation *sua sponte. Watson v. Dep't of Serv. for Children, Youths and Their Families Delaware,* Civ. Nos. 10-978-LPS, 12-019-LPS, 2012 WL 2072867, at *6 (D. Del. June 8, 2012).

Cases need not share complete identity of law or facts for consolidation to be appropriate. *See Syngenta Seeds, Inc. v. Monsanto Co.*, No. Civ. 04–908–SLR, 2005 WL 678855, at *3 (D. Del. Mar. 24, 2005) (ordering consolidation of two cases despite a number of factual and legal differences between them because they presented "minimal factual and legal overlap" and because consolidation would serve judicial efficiency). In the instant case, the Court has already found that the allegations in *Leonard II* are factually distinct from those pled in *Leonard I* in one important way: they are temporally distinct, in that the conduct alleged in *Leonard II* occurred at a time (on or about January 16, 2012) well after the allegations of infringement addressed in the Amended Complaint in *Leonard I.* However, in many other respects, as both parties seem to agree, there is significant commonality between the claims at issue in *Leonard I* and *Leonard II.* The claim that is the subject of *Leonard II* involves (1) similar alleged infringing conduct to that in *Leonard I*; (2) by the same defendant; (3) with respect to Image 3, the same copyrighted material. Further, the two cases assert the same basic causes of action (copyright infringement),

so the legal issues overlap greatly. As a result, there are clearly common questions of law and fact at play in the two actions.

Having determined that these commonalities of law and fact exist, the Court must then determine whether consolidating the cases would best serve the administration of justice. In making this determination, this Court has generally examined whether there are overlapping parties, witnesses and documents between the actions; or whether consolidation would likely generate inconvenience, delay, expense or the risk of inconsistent results. *See generally Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 761 (D. Del. 1991); *Rohm & Haas Co.*, 525 F. Supp. at 1310.

Here, there is complete overlap of the parties in the two actions. Moreover, although it is not entirely clear what specific witnesses or documents are implicated by the allegations in *Leonard II*, because the allegations are made against the same defendant as in *Leonard I* and implicate some of the same legal issues and fact patterns at issue in *Leonard I*, it is a reasonable assumption that there may be some overlap of witnesses or documentary evidence between the cases.

Lastly, the Court does not believe that consolidation would generate undue inconvenience, delay, expense or the risk of inconsistent results. The trial date in *Leonard I* has only recently been set, and that date (February 19, 2013) is still approximately six months away. (*Leonard I*, D.I. 157) Because *Leonard II* involves only a handful of alleged wrongful acts, which primarily relate to the posting of one Image on three web pages on one particular day, a significant amount of fact discovery will not likely be necessary in that case. Thus, it appears that were *Leonard II* to be consolidated with *Leonard I*, the parties could craft a Scheduling Order in the consolidated

23

cases that would enable the claims in both cases to be tried on the current trial date now set in *Leonard I*, or at least relatively soon thereafter. In light of this, and because it would clearly be most efficient to adjudicate all of the matters at issue in the two cases together, the Court orders that they be consolidated.

### B. Motion for Sanctions

In its Motion for Sanctions, Defendant argues that sanctions are necessary here because there can be no justifiable reason for Plaintiff to file a case that is "virtually identical" to *Leonard I*. Specifically, Defendant argues that, given the similarities between the two lawsuits, and the fact that the instant suit was filed only shortly after the Report in *Leonard I* was issued, the only possible reasons that Plaintiff initiated this action are to either: (1) try to improperly revive the damages claims that were dismissed from *Leonard I*; or (2) harass Defendant into settling for more than Plaintiff's case is worth by threatening and pursuing "never-ending frivolous" lawsuits. (D.I. 10 at 17) For its part, Plaintiff argues that this action is not identical to *Leonard I*, for the reasons set forth above in the Court's discussion of the Motion to Dismiss. Plaintiff further argues that he offered to consolidate this case with *Leonard I*, or supplement the Amended Complaint in that action to address the claims in *Leonard II* (in lieu of pursuing a separate action), but Defendant did not respond to that offer. (D.I. 21 at 2)

This Court has explained that "Rule 11 imposes an affirmative duty on the parties to conduct a reasonable inquiry into the applicable law and facts prior to filing. An inquiry is considered reasonable under the circumstances if it provides the party with an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." *Loving*, 11 F. Supp. 2d at 493 (quotation marks and citations omitted).

24

The Court finds that the actions of Plaintiff and his counsel here were objectively reasonable.

As noted above, Plaintiff has explained that the motivation behind filing the instant action was his recent discovery of what he believes to be new and different acts of infringement by Defendant—acts that, he argues, are not expressly claimed by the pleadings currently at issue in *Leonard I*. (D.I. 21 at 3) In addressing the Defendant's Motion to Dismiss, the Court has found that the filing of *Leonard II* did not amount to the promotion of improperly duplicative litigation. To the contrary, as discussed above, Third Circuit precedent (and the related precedent of other courts) instructs that if Plaintiff wished to take legal action to remedy the January 16, 2012 infringements, he could permissibly have done what he did—file a new complaint.

It is for this reason that *Loving v. Pirelli Cable Corp.*, 11 F. Supp. 2d 480 (D. Del. 1998), on which Defendant places heavy reliance, is distinguishable. In *Loving*, the first action, filed in federal court, was dismissed in its entirety on statute of limitations grounds. *Id.* at 484. Following the Third Circuit's affirmance of that dismissal, plaintiff re-filed an essentially "identical" action against the same defendant in state court. *Id.* at 484, 491. In responding to the defendant's later-filed motion for sanctions, plaintiff's counsel argued that the second suit was proper pursuant to 28 U.S.C. § 1367 (the federal supplemental jurisdiction statute), because "the relevant law stat[ed] that once an issue has been litigated, the state court can revisit that issue." *Id.* at 487. The *Loving* Court found this explanation to be "incomprehensible" and noted that "[b]asic knowledge of civil procedure, the doctrine of supplemental jurisdiction, and the plain words of the statute should have informed [counsel] that § 1367 was inapplicable to this matter."

*Id.* at 494.[19]  Plaintiff's conduct here does not come close to the level of objective

unreasonableness at issue in *Loving*.

Penalties under Rule 11 are reserved for the most severe and flagrant violations of the

Federal Rules, the law, and the standards of professionalism to which this Court adheres.  This is

not such a case.  *Cf. Dorsey v. Jacobson Holman PLLC*, 764 F. Supp. 2d 209, 213 (D.D.C. 2011)

(finding that even when plaintiff's second-filed lawsuit amounted to improper claim-splitting,

Rule 11 sanctions were not warranted).

## IV.    CONCLUSION

For the reasons set forth above, the Court:  (1) recommends that Defendant's Motion to

Dismiss be DENIED; and (2) orders that Defendant's Motion for Sanctions be DENIED.  The

Court also orders that Civil Action No. 08–67–LPS–CJB and Civil Action No. 12–86–LPS–CJB

are consolidated for all purposes.  All papers shall be filed in Civil Action No. 08–67–LPS–CJB.

The parties are also ordered to file, by no later than **September 21, 2012**, a new proposed

Scheduling Order in the consolidated cases.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(A) &(B),

Fed. R. Civ. P. 72(a) & (b), and D. Del. LR 72.1.  The parties may serve and file specific written

objections within fourteen (14) days after being served with a copy of this Report and

Recommendation.  Fed. R. Civ. P. 72(b).  The failure of a party to object to legal conclusions may

result in the loss of the right to de novo review in the district court.  *See Henderson v. Carlson*,

812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir.

---

[19]    In addition, the attorney whose conduct was at issue in *Loving* had already been warned by the same judge in a previous case involving another potential Rule 11 violation that "any future 'misuse of the judicial process' [would] result in appropriate sanctions." *Id.* at 494.

2006).

    The parties are directed to the Court's Standing Order In Non-Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72(b), dated November 16, 2009, a copy of which is available on the Court's website, http://www.ded.uscourts.gov/StandingOrdersMain.htm.


Dated: August 24, 2012

                                       _Christopher J. Burke_
                                       Christopher J. Burke
                                       UNITED STATES MAGISTRATE JUDGE